Citation Nr: 1542418 
Decision Date: 09/30/15 Archive Date: 10/05/15

DOCKET NO. 11-15 070 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Newark, New Jersey


THE ISSUES

1. Entitlement to an initial compensable disability rating for right knee strain prior to February 22, 2010. 

2. Entitlement to an initial disability rating greater than 10 percent for right knee strain from February 22, 2010. 

3. Entitlement to an initial compensable disability rating for right knee instability prior to November 19, 2014.

4. Entitlement to an initial disability rating greater than 10 percent for right knee instability from November 19, 2014. 

5. Entitlement to an initial compensable disability rating for right ankle sprain prior to April 13, 2010.

6. Entitlement to an initial disability rating greater than 10 percent for right ankle sprain from April 13, 2010.


REPRESENTATION

Veteran represented by: John P. Dorrity, Agent


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

J. J. Tang, Associate Counsel


INTRODUCTION

The Veteran served on active duty from September 2007 to January 2008, and June 2008 to July 2009.
 
This case is before the Board of Veterans' Appeals (Board) on appeal from a December 2010 rating decision by a Regional Office (RO) of the Department of Veterans Affairs (VA). 

In September 2014, the Board remanded the case for evidentiary development, and the case is again before the Board for further appellate proceedings. 

In a December 2014 rating decision, the RO granted increased ratings of 10 percent for right knee strain from February 22, 2010, and of 10 percent for right ankle sprain from April 13, 2010, and a separate evaluation of 10 percent for right knee instability from November 19, 2014 the evaluation of instability is considered to be part and parcel of the already-pending appellate right knee rating issue. As these increases do not constitute a full grant of the benefits sought, the issues are before the Board for further appellate proceedings. See generally AB v. Brown, 6 Vet. App. 35, 38-39 (1993). 

All documents on the Virtual VA paperless claims processing system and the Veterans Benefits Management System (VBMS) have been reviewed, including a transcript of the September 2013 Board hearing presided over by the undersigned Acting Veterans Law Judge. 


FINDINGS OF FACT

1. At all times during the appellate period, the Veteran's right knee strain has been manifested by no worse than pain on motion and with repetitive use, range of motion from 0 to 135 degrees, and radiographic evidence of degenerative changes; there is no ankylosis or meniscal injury.

2. Prior to November 19, 2014, the Veteran's right knee is not shown to be unstable in any plane.

3. Since November 19, 2014, the Veteran's right knee is shown to be no worse than mildly unstable anteriorly; other planes are stable.

4. Prior to November 19, 2014, the Veteran's right ankle disability was manifested by no worse than moderate limitation of motion in dorsiflexion, with pain on motion and repetitive use and radiographic evidence of early degenerative changes; there was no ankylosis or objectively shown laxity of the joint.

5. Since November 19, 2014, the Veteran's right ankle disability is manifested by no worse than marked limitation of motion in dorsiflexion, with pain on use and with repetitive motion; there was no ankylosis or objectively shown laxity of the joint.


CONCLUSIONS OF LAW

1. Prior to February 22, 2010, the criteria for an increased, initial disability rating of 10 percent, but no higher, for the Veteran's right knee strain have been met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.2, 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5260, 5261 (2015).

2. Since February 22, 2010, the criteria for an initial disability rating greater than 10 percent for the Veteran's right knee strain have not been met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.2, 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5003, 5010, 5260, 5261 (2015).

3. Prior to November 19, 2014, the criteria for an initial compensable disability rating for the Veteran's right knee instability have not been met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.2, 4.3, 4.7, 4.10, 4.40, 4.45, 4.71a, Diagnostic Code 5257 (2015).

4. Since November 19, 2014, the criteria for an initial disability rating greater than 10 percent for the Veteran's right knee instability have not been met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.2, 4.3, 4.7, 4.10, 4.40, 4.45, 4.71a, Diagnostic Code 5257 (2015).

5. Prior to April 13, 2010, the criteria for an increased, initial disability rating of 10 percent, but no higher, for the right ankle disability have been met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.2, 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5271 (2015).

6. From April 13, 2010 to November 19, 2014, the criteria for an initial disability rating greater than 10 percent for the right ankle disability have not been met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.2, 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5271 (2015).

7. Since November 19, 2014, the criteria for an increased initial disability rating of 20 percent, but no higher, for the right ankle disability have been met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.2, 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5271 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Compliance with Prior Remand

In September 2014, the Board remanded the claims and directed the AOJ to obtain outstanding VA treatment records, and the AOJ did so. The Board also directed the AOJ to afford the Veteran VA examinations to determine the nature and severity of his right knee and right ankle disabilities. The Veteran was examined in November 2014 and the examiner provided the requested information. The Veteran's claims were readjudicated in a December 2014 supplemental statement of the case. Therefore, the Board's prior remand instructions have been substantially complied with. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (holding that where the remand orders of the Board are not complied with, the Board errs as a matter of law when it fails to ensure compliance). 

 Duties to Notify and Assist

VA has met all the duty to notify and duty to assist provisions. See 38 U.S.C.A. §§ 5103, 5103A (West 2014); 38 C.F.R. §§ 3.159, 3.326 (2015). 

When VA receives a complete or substantially complete application for benefits, it will notify the claimant of (1) any information and medical or lay evidence that is necessary to substantiate the claim, (2) what portion of the information and evidence VA will obtain, and (3) what portion of the information and evidence the claimant is to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). VA must also notify the Veteran of the information regarding how an effective date and disability rating are determined. Dingess v. Nicholson, 19 Vet. App. 473 (2006); Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

Because service connection has been granted and an initial disability rating and effective date have been assigned for the disabilities on appeal, the purpose for serving notice has been fulfilled and further VCAA notice is unnecessary. Dingess v. Nicholson, 19 Vet. App. 473, 490-91 (2006). The Board notes that the Veteran was provided pre-adjudication notice in June 2010 regarding how to substantiate the underlying claims for service connection and how VA determines the disability rating and effective date. 

Duty to Assist

VA has fulfilled its duty to assist in obtaining identified and available evidence needed to substantiate the claim. Service treatment records, post-service treatment records, and lay statements have been associated with the record. 

Additionally, the Veteran was afforded VA examinations in September 2010 and November 2014 regarding the disabilities on appeal. The examiners conducted examinations and provided sufficient information regarding the Veteran's right ankle and right knee disability manifestations, such that the Board can render an informed determination. The Board finds that the examinations are adequate for rating purposes. 

The Board acknowledges that the Veteran's agent has argued that the September 2010 VA examination is inadequate because the examination report was unclear as to whether the Veteran's range of motion measurements were taken while the Veteran was wearing his braces. See September 2013 Board hearing transcript at p. 14. However, as the examiner provided findings regarding whether there was effusion in the joint and other knee joint findings, the Board concludes that the examiner examined the Veteran when the Veteran was not wearing his brace and it would follow that range of motion testing was performed while the Veteran was not wearing his brace. Further, the Veteran's agent stated that he would assume that the Veteran's brace was off, but that he has seen other examinations performed with a brace on in the past. The Board also finds that it is significant that the Veteran himself has not indicated that examination was performed while he was wearing his brace. For these reasons, the Board finds that the Veteran's agent's argument is speculative at best and therefore without merit. 

Because there is no indication in the record that any additional evidence pertinent to the claims is available and unassociated with the file, the Board concludes VA has satisfied its duty to assist.

Increased Ratings

The Veteran contends that the current ratings for his right knee disability and right ankle disability do not accurately depict the severity of his disabilities. 

In evaluating the severity of a certain disability, it is essential to consider its history. 38 C.F.R. § 4.1; Peyton v. Derwinski, 1 Vet. App. 282 (1991). Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary importance. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Separate ratings may be assigned for separate periods of time based on the facts found. This practice is known as "staged ratings." Fenderson v. West, 12 Vet. App. 119, 126-127 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). 

If the evidence for and against a claim is in equipoise, the claim will be granted. A claim will be denied only if the preponderance of the evidence is against the claim. See 38 U.S.C.A. § 5107 (West 2002); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 56 (1990). Any reasonable doubt regarding the degree of disability should be resolved in favor of the claimant. 38 C.F.R. § 4.3. Where there is a question as to which of two evaluations shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that evaluation. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 

Disability evaluations are determined by the application of the facts to VA's Schedule for Rating Disabilities (Rating Schedule) at 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and the residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.321(a), 4.1. VA has a duty to acknowledge and consider all regulations that are potentially applicable through the assertions and issues raised in the record, and to explain the reasons and bases for its conclusions. Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

Terms such as "frequent," "slight," "moderate," "severe," and "marked" are not defined in the regulations. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are "equitable and just." 38 C.F.R. § 4.6. Although the use of the terms "frequent," "slight," "moderate," "severe," and "marked" by VA examiners and others is evidence to be considered by the Board, it is not dispositive of the issue. All evidence must be evaluated in arriving at a decision regarding an increased rating. 38 C.F.R. §§ 4.2, 4.6.

In evaluating any musculoskeletal disability, to include on the basis of limitation of motion, VA must consider the actual degree of functional impairment imposed by pain, pain on movement, restricted or excess movement of the joint, stiffness, swelling, incoordination, instability of station, disturbance of locomotion, weakness, fatigue, and lack of endurance, to include during flare-ups and with repetitive use. 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202 (1995) (the Deluca factors). 

The analysis below focuses on the most salient and relevant evidence and on what this evidence shows or fails to show. The Veteran should not assume that the Board has overlooked pieces of evidence that are not specifically discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000). 

Right Knee 

The Veteran is in receipt of ratings for both right knee strain and for right knee instability. Separate ratings may be assigned for knee disability under Diagnostic Codes 5257 and 5003 where there is x-ray evidence of arthritis in addition to recurrent subluxation or lateral instability. The symptomatology supporting the evaluations does not overlap; limitation of motion and stability are distinct from each other. See generally VAOPGCPREC 23-97 and VAOPGCREC 9-98. Further, VAOPGCPREC 9-04 provides that where a claimant has both limitation of flexion and limitation of extension of the same leg separate ratings under diagnostic codes 5260 and 5261 are warranted to adequately compensate for functional loss associated with injury to the leg. By extension, evaluations under Code 5257 and either or both Code 5260 and Code 5261 are permissible, as each of the three codes measures different criteria. By contrast, an evaluation under Code 5003 may not be combined with one under Code 5260 or Code 5261; Code 5003 does not specify the plane of limited motion considered, and so evaluation under either of the other limitation of motion Codes forecloses the possibility of multiple evaluations. See generally VAOPGCPREC 23-97 and VAOPGCREC 9-98; 38 C.F.R. § 4.14. The assigned evaluations are discussed separately below, following a summary of the relevant evidence.

In an April 13, 2010 VA x-ray report, the impression was right knee minimal degenerative changes and trace to small joint effusion. 

On VA general medical examination in September 2010, the Veteran reported right knee pain after he runs. 

On VA examination in September 2010, the Veteran denied right knee swelling and locking. The Veteran also denied additional limitation following repetitive use or during a flare-up. He reported that the right knee buckles. The VA examiner noted that the April 2010 x-ray showed degenerative changes of the right knee. On physical examination, there was no right knee gross deformity, no joint effusion, and anterior drawer and Lachman tests were negative. There was mild joint-line tenderness. Range of motion testing was 0-135 degrees with mild pain at 135 degrees. After three repetitions of range of motion testing, the pain and range of motion was unchanged. There was also no evidence of fatigue, weakness, or lack of endurance. The Veteran was diagnosed with right knee strain. 

In the September 17, 2013 Board hearing, the Veteran reported that he has instability of the right knee and that his right knee gives out. 

On VA examination on November 19, 2014, the Veteran was diagnosed with right knee strain and degenerative arthritis with date of diagnosis of November 19, 2014. The Veteran reported that his leg "gives out at times." The Veteran denied flare-ups that impact the function of the knee. The Veteran described the functional loss or impairment of the right knee as giving out. On physical examination, the Veteran's right knee range of motion was abnormal, with flexion of 0-135 degrees, and extension of 135-0 degrees. There was no pain noted on examination or with weight-bearing, and there was no localized tenderness or pain on palpation of the knee. The Veteran was able to perform repetitive use testing with three repetitions, and there was no additional loss of function or range of motion after three repetitions. 

The November 2014 VA examiner was unable to say without mere speculation as to whether pain, weakness, fatigability, or incoordination significantly limits functional ability with repeated use over a period of time. The examiner stated that there was no history of recurrent subluxation, lateral instability, recurrent effusion, or meniscus (semilunar cartilage) condition. However, the examiner did note that there was right knee joint instability, with anterior instability per the Lachman test of 1+ (0-5 millimeters). The x-ray performed on VA examination showed mild osteoarthritis of the medial joint space, probable capsular ossification medial to the medial femoral condyle, and joint effusion. 

 Sprain 

The right knee sprain is currently evaluated as noncompensable prior to February 22, 2010, and 10 percent disabling since that date, under 38 C.F.R. § 4.71a, Code 5003-5261. However, the Board notes that application of Code 5261 is improper; there is no showing or allegation of limitation of extension of the knee joint, which Code 5261 evaluates. Instead, flexion is impacted by the sprain, and is rated under Code 5260. As the December 2010 rating assigning the Code discusses flexion exclusively, it appears the use of Code 5261 on the Codesheet was merely a typographical or data entry error by the RO.

There is no lay or medical evidence of ankylosis of the right knee during the entire appeal period, Code 5256 (pertaining to ankylosis of the knee) is not for application. 38 C.F.R. § 4.71a. Further, though the Board acknowledges that during the entire appeal period the Veteran has had occasional episodes of effusion into the right knee joint, the evidence shows that there is no history of a meniscus or semilunar cartilage condition during the entire appeal period, and hence Code 5258 and Code 5259 are not for application. Finally, while evaluations under Code 5262 may be based in part upon knee disability, the underlying impairment must be related to damage to the bones of the lower leg. No tibia or fibula impairment is shown here. 38 C.F.R. § 4.71a. 

For limitation of motion, there are three potentially applicable Diagnostic Codes. Code 5260 assigns evaluations based on limitation of flexion. Limitation to 60 degrees merits a noncompensable, or 0 percent, evaluation. A 10 percent evaluation is assigned for limitation to 45 degrees. Limitation to 30 degrees flexion warrants a 20 percent evaluation, and a 30 percent evaluation is assigned for limitation to 15 degrees of flexion. 38 C.F.R. § 4.71a, Code 5260. 

Limitation of extension is rated under Code 5261. A noncompensable evaluation is assigned for limitation to 5 degrees. A 10 percent evaluation is for assignment when extension is limited to 10 degrees. Fifteen degrees limitation merits a 20 percent evaluation, and 20 degrees merits a 30 percent evaluation. Limitation to 30 degrees is evaluated as 40 percent disabling, and limitation to 45 degrees warrants a 50 percent evaluation. 38 C.F.R. § 4.71a, Code 5261. 

In evaluating any disability on the basis of limitation of motion, VA must consider the actual degree of functional impairment imposed by pain, incoordination, weakness, fatigue, and lack of endurance with repetitive motion. 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202 (1995). 

Finally, Code 5003, for degenerative arthritis, provides that degenerative arthritis that is established by X-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved, as discussed above. When there is no limitation of motion of the specific joint or joints that involve degenerative arthritis, Diagnostic Code 5003 provides a 20 percent rating for degenerative arthritis with X- ray evidence of involvement of 2 or more major joints or 2 or more minor joint groups, with occasional incapacitating exacerbations, and a 10 percent rating for degenerative arthritis with X-ray evidence of involvement of 2 or more major joints or 2 or more minor joint groups. 38 C.F.R. § 4.71a, Code 5003. 

Note (1) provides that the 20 pct and 10 pct ratings based on X- ray findings will not be combined with ratings based on limitation of motion. Note (2) provides that the 20 percent and 10 percent ratings based on X-ray findings will not be utilized in rating conditions listed under Diagnostic Codes 5013 to 5024, inclusive. 38 C.F.R. § 4.71a, Code 5003. 

When there is some limitation of motion of the specific joint or joints involved that is noncompensable (0 percent) under the appropriate diagnostic codes, Diagnostic Code 5003 provides a rating of 10 percent for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added, under Diagnostic Code 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. 38 C.F.R. § 4.71a, Code 5003. 

Two periods of evaluation are at issue here. During the entire appeal period, covering both stages, the Veteran has complained of pain in the right knee. See e.g., September 2010 VA general medical examination (reporting knee pain since service). The Veteran is competent to report his symptoms, and the Board finds that these reports are credible. Additionally, radiographic evidence establishes the presence of degenerative changes throughout both periods on appeal. Evaluation, then, rests on the extent of the functional impairment of the knee's motion.

That motion has been measured as ranging from 0 to 135 degrees in flexion, marking a loss of five degrees from normal. The Veteran has reported pain at the end of movement, but such did not cause any additional functional impairment. Similarly, there is no additional limitation from weakness, fatigability, or incoordination, even with repetitive motion. The measured loss, to include the impact of the DeLuca factors, does not rise to the level required for a compensable evaluation under a joint-specific knee Code such as 5260 or 5261; no increased rating may be assigned before or after February 22, 2010, under those Codes. 

Therefore, the criteria under Code 5003 are for application. In light of the painful and limited motion throughout the appellate period, and the presence of degenerative changes on x-ray, a 10 percent rating is warranted under Code 5003 for the entirety of the appellate period. Prior to February 22, 2010, this represents an award of an increased rating. After February 22, 2010, the currently assigned 10 percent rating is confirmed and continued.

 Instability

The Veteran's right knee instability is currently rated as noncompensable prior to November 19, 2014, and as 10 percent disabling from November 19, 2014. For the below reasons, the Board finds that the staged rating periods assigned for the right knee instability by the AOJ are appropriate in this case, and no increased evaluation is warranted for either stage. See Fenderson v. West, 12 Vet. App. 119, 126-127 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). 

Under Code 5257, regarding recurrent subluxation or lateral instability of the knee, a 10 percent rating is warranted if such impairment is slight; a 20 percent rating is warranted if such impairment is moderate; and, a 30 percent maximum rating is warranted if such impairment is severe. 38 C.F.R. § 4.71a.

Prior to the November 19, 2014 VA examination, there is no competent evidence of right knee joint instability on any joint plane. Though the Veteran stated that his right knee buckles on VA examination in September 2010, and repeated that allegation at his September 2013 hearing, the objective evidence on examination up to that point showed no instability, in that the anterior drawer and Lachman tests were negative. The Veteran is competent to describe the sensation of giving way he experiences. Layno v. Brown, 6 Vet. App. 465 (1994). However, the objective testing outweighs his lay statement. The Veteran's expertise is limited to describing the sensation; he is not competent to attribute it to a cause, such as internal, unobservable derangement of the knee. Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007); Kahana v. Shinseki, 24 Vet.App. 428, 435 (2011). Therefore, no compensable evaluation may be assigned for instability of the right knee prior to November 18, 2014.

As of that date, a VA examiner was able to objectively verify the Veteran's subjective lay reports of instability, finding 1+ (0-5 mm) anterior instability via a Lachman test. By inference, he rejected higher quantifications of instability of 2+ (5-10 mm of laxity) and 3+ (10-15mm). This mild degree of instability is consistent with the Veteran's description of the knee giving out "at times." See November 2014 VA examination. There is no allegation of falls due to the knee, nor do medical records indicate such. The Veteran remained able to ambulate without a problem though he did use a knee brace regularly. 

The Board notes that at the November 2014 examination, the examiner indicated that the Veteran would be equally well served by a prosthetic device at the knee, which he then specified meant use of a knee brace. This utterly misunderstands the inquiry, which is focused on determining whether the disability is the equivalent of amputation with an artificial lower leg and joint, not whether a supportive or assistive device is used. The examiner's statement in this regard is given no probative weight in light of the other findings of continued good knee function and functional capacity.

The Board determines that the instability presented after November 19, 2014 is no greater than slight, and therefore no increased evaluation is warranted for the right knee under Code 5257 for that period.

Right Ankle

The Veteran's right ankle disability is currently evaluated as noncompensable prior to April 13, 2010, and 10 percent disabling from April 13, 2010, under 38 C.F.R. § 4.71a, Code 5271. 

The Board notes that because the Veteran retains the ability to move the right ankle and because there is no lay or medical evidence of ankylosis of the right ankle during the entire appeal period, Code 5270 (pertaining to ankylosis of the ankle or its functional equivalent) is not for application. 38 C.F.R. § 3.71a. 

Under Code 5271, regarding limitation of motion of the ankle, a 10 percent rating is warranted for moderate limitation of motion; and, a 20 percent maximum rating is warranted for marked limitation of motion. 38 C.F.R. § 4.71a.

For VA purposes, normal ankle dorsiflexion is 0 to 20 degrees, and normal ankle plantar flexion is 0 to 45 degrees. 38 C.F.R. § 4.71, Plate II. 

During the entire appeal period, the Veteran has complained of right ankle pain. See e.g., September 2010 VA general medical examination (reporting ankle pain since service). The Veteran is competent to report his symptoms, and the Board finds that these reports are credible. 

On VA general medical examination in September 2010, the Veteran reported right ankle pain after he runs. 

On VA orthopedic examination on September 18, 2010, the Veteran denied swelling of the right ankle. On physical examination, the right ankle demonstrated no gross deformity and there was no edema. There was mild tenderness to palpation of the ankle. Range of motion testing showed dorsiflexion of 0-10 degrees without pain, and plantarflexion of 0-50 with mild discomfort at end range of motion. After three repetitive range of motion testing, pain and range of motion were unchanged. There was no evidence of fatigue, weakness, or lack of endurance. The x-ray of the right ankle performed on VA examination showed an impression of "suspect minor chronic posttraumatic mineralization changes within the soft tissues subjacent to the lateral malleolus." The VA examiner diagnosed the Veteran with mild ankle sprain. 

In a July 2011 VA treatment record, the Veteran reported that his right ankle is "rolling on him." There was no objective loss of balance without assistive devices. The Veteran also testified that his right foot rolls over and that his plastic ankle brace keeps his foot and ankle in place. See September 2013 Board hearing at p. 6. 

On VA examination on November 19, 2014, the Veteran denied flare-ups that impact the function of the ankle. The Veteran described the functional loss or impairment of the right ankle as "frequent re-injury." On physical examination, the Veteran's right ankle range of motion was abnormal, with dorsiflexion of 0-5 degrees and plantar flexion of 0-45 degrees. There was no pain noted on examination. There was also no objective evidence of tenderness or pain on palpation. The Veteran was able to perform repetitive use testing with three repetitions, and there was no additional loss of function or range of motion after three repetitions. The examiner was unable to say without mere speculation as to whether pain, weakness, fatigability, or incoordination significantly limits functional ability with repeated use over a period of time. The examiner opined that right ankle joint instability or dislocation was suspected. The Veteran denied using assistive devices for the right ankle. The November 2014 imaging studies performed on VA examination showed impression of ankle mortise maintained without acute fracture or dislocation, and the November 2014 VA examiner stated that no arthritis was shown. The VA examiner opined that the Veteran's right ankle disability limits his ability to run or jump. The Board notes that there was no objectively shown laxity of the joint. 

Prior to April 13, 2010, since separation from service, the right ankle disability was manifested by complaints of pain; the Veteran is both competent and credible in reporting such. Layno v. Brown, 6 Vet. App. 465 (1994); Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007); Kahana v. Shinseki, 24 Vet.App. 428, 435 (2011). Moreover, when examined by VA in September 2010, limitation of motion in dorsiflexion was shown, with a loss of 10 degrees, or half the normal range. Although there are no measurements of ankle motion prior to that date of record, all reasonable doubt is resolved in favor of the Veteran, and the Board must presume that his complaints of pain reflect a continuity of that same impairment since separation. The loss of half the range of motion in one plane is considered to be moderate in degree; the criteria on their face divide motion into thirds (an unnamed slight or mild, moderate, and marked), and loss of half falls squarely into the second third. An increased, 10 percent evaluation is warranted for the period prior to April 13, 2010.

The same analysis applies to the period from April 13, 2010, to November 19, 2014. The Veteran's complaints remained consistent, and there was no documentation or objective testing showing any greater degree of impaired movement. The continued loss of half the range of motion in dorsiflexion warrants a 10 percent rating for moderate ankle limitation.

The Board has considered the impact of the DeLuca factors during this period. While the Veteran stated that his ankle pain was aggravated by walking, and reported that the joint would "roll" due to weakness, no additional functional impairment was identified on the examination applicable to this period, even following repeated movement. Range of motion limitations remained moderate in degree. No evaluation in excess of 10 percent is warranted prior to November 19, 2014.

Effective November 19, 2014, however, an increase in functional impairment was shown on VA examination. Dorsiflexion was further reduced to five degrees, within the first third of the normal range. Plantar flexion was also reduced, though still within a normal range. This degree of limitation of function is considered marked, warranting assignment of a higher, 20 percent rating effective the first day on which the additional loss was shown. This is the maximum Schedular evaluation for the ankle under the applicable Codes.

Extraschedular Rating
 
Consideration has been given to the possibility of assignment of an extraschedular evaluation under 38 C.F.R. § 3.321. Extraschedular consideration involves a three step analysis. Thun v. Peake, 22 Vet. App. 111 (2008).

First, a determination must be made as to whether the schedular criteria reasonably describe a veteran's disability level and symptomatology. Id. At 115. If the schedular rating criteria do reasonably describe a veteran's disability level and symptomatology, referral for extraschedular consideration is not required and the analysis stops. Id.

If the schedular rating criteria do not reasonably describe a veteran's level of disability and symptomatology, a determination must be made as to whether an exceptional disability picture includes other related factors, such as marked interference with employment and frequent periods of hospitalization. Id. At 116.

If an exceptional disability picture including such factors as marked interference with employment and frequent periods of hospitalization exists, the matter must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for the third step of the analysis, determining whether justice requires assignment of an extraschedular rating. Id.

The Board also notes that a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. Johnson v. McDonald, 762 F.3d 1362 (2014). 

Here, the schedular criteria, as applied through application of the regulations and the DeLuca factors, fully contemplate the Veteran's complaints of pain, instability, weakness, and limitation of motion of the right knee and ankle. The criteria establish ratings based on the retained actual functional impairment, and require consideration of the impact of symptoms such as those the Veteran complains of. His reports of pain on use, rolling/weakness of the ankle, and giving way of the knee are all accounted for. Therefore, further discussion of extraschedular entitlement is not required. Thun v. Peake, 22 Vet. App. 111 (2008).


ORDER

Prior to February 22, 2010, an increased disability rating of 10 percent, but no higher, for the Veteran's right knee strain is granted, subject to the law and regulations governing the payment of monetary benefits. 

Since February 22, 2010, a disability rating greater than 10 percent for the Veteran's right strain is denied.

Prior to November 19, 2014, a compensable disability rating for right knee instability is denied.

Since November 19, 2014, a disability rating greater than 10 percent for the Veteran's right knee instability is denied.

Prior to April 13, 2010, an increased disability rating of 10 percent, but no higher, for the right ankle disability is granted, subject to the law and regulations governing the payment of monetary benefits. 

From April 13, 2010 to November 19, 2014, a disability rating greater than 10 percent for the right ankle disability is denied. 

Since November 19, 2014, an increased disability rating of 20 percent, but no higher, for the right ankle disability is granted, subject to the law and regulations governing the payment of monetary benefits. 




____________________________________________
WILLIAM H. DONNELLY
Acting Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs